# In the United States Court of Federal Claims

No. 13-940C
(Filed: August 24, 2016)

```
*************************************
SONOMA APARTMENT ASSOCIATES,   *
A California Limited Partnership,   *
                                   *        Motion for Partial Summary Judgment on
                  Plaintiff,        *        Tax Gross-Up Claim; Breach of Contract for
                                   *        Failure to Allow Prepayment of Loan
  v.                                *        Balance; Request for Payment to Neutralize
                                   *        Increase in Overall Tax Burden Resulting
THE UNITED STATES,                 *        From Lump-Sum Damages Award
                                   *
                  Defendant.        *
*************************************
```

<u>Michael G. Miller</u>, Santa Rosa, CA, for plaintiff.

<u>Jeffrey A. Regner</u>, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

**SWEENEY**, Judge

    Plaintiff Sonoma Apartment Associates, a California Limited Partnership, obtained a loan from the federal government to construct rural low- and moderate-income housing. Plaintiff was contractually entitled to prepay the balance of the loan after twenty years, but when it sought to exercise this right, the government denied its request. The government conceded liability for breach of contract and the case is set for trial on the issue of damages. Currently before the court is defendant's motion for partial summary judgment on plaintiff's claim for a "tax neutralization payment" to account for the increased tax burden that it would bear in the event of a lump-sum damages award. For the reasons set forth below, the court denies defendant's motion.

## I. BACKGROUND

### A. Factual History

    On September 4, 1984, plaintiff executed an agreement with the Farmers Home Administration of the United States Department of Agriculture in which the government agreed, pursuant to section 515 of the Housing Act of 1949, Pub. L. No. 81-171, 63 Stat. 413 (as added by Pub. L. No. 87-723, § 4(b), 76 Stat. 670, 671-72 (1962)), to lend plaintiff $1,261,080 to

construct a thirty-unit family apartment project at 59 West Agua Caliente Road, Sonoma, California.[1]  Plaintiff agreed to repay the loan in installments over a fifty-year period.

In conjunction with the loan agreement, plaintiff executed two promissory notes in favor of the government, one for $1,222,650, and the other for $38,430.  Both promissory notes reflected the fifty-year loan repayment period and included the following provision: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower providing the loan is in a current status."  The promissory notes, in turn, were secured by a deed of trust that included a rider containing the following language:

> The borrower and any successors in interest agree to use the housing for the purpose of housing people eligible for occupancy as provided in section 515 of Title V of the Housing Act of 1949 and [Farmers Home Administration] regulations then extant during this 20-year period, beginning the date this instrument is filed of record.

The deed of trust was recorded on October 28, 1985.

After plaintiff executed the loan agreement, the promissory notes, and the deed of trust, Congress enacted two statutes that retroactively limited a borrower's right to prepay the balance of a loan made pursuant to section 515 of the Housing Act of 1949:  the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA"), Pub. L. No. 100-242, 101 Stat. 1877 (1988), and the Housing and Community Development Act of 1992, Pub. L. No. 102-550, 106 Stat. 3672.

Plaintiff provided housing to eligible individuals for the twenty-year period described in the deed of trust rider.  Subsequently, on November 5, 2010, plaintiff submitted a written request to Rural Development–the agency within the United States Department of Agriculture responsible for the rural housing programs formerly administered by the Farmers Home Administration–to prepay the balance of its loan.  On January 3, 2011, Rural Development offered plaintiff certain incentives in lieu of accepting prepayment.  Plaintiff rejected the offer, and on January 7, 2011, Rural Development rejected plaintiff's prepayment request.

### B.  Procedural History

Plaintiff filed suit in the United States Court of Federal Claims ("Court of Federal Claims") on November 27, 2013, alleging that Rural Development improperly refused its request to prepay the balance of its loan.  It thereafter filed an amended complaint in which it asserted two claims for relief:  breach of contract and a violation of the Takings Clause of the Fifth Amendment to the United States Constitution.  After the parties concluded fact discovery, plaintiff filed a motion for partial summary judgment as to the government's liability for breach of contract and defendant filed a motion to dismiss plaintiff's Fifth Amendment takings claim.

---

[1]  All facts are undisputed.

In a December 30, 2015 Opinion and Order, the court granted both motions.  As a result, the sole remaining issue was the amount of damages, if any, due plaintiff for the government's breach of contract.

On May 2, 2016, the parties exchanged expert reports on the issue of damages.  The report of one of plaintiff's experts–Barry Ben-Zion, Ph.D.–contained a new claim for a "tax neutralization payment."  Def.'s App. 12.  Dr. Ben-Zion explained:

> If Sonoma Apartment Associates is awarded the past and future loss of net income, the entire amount of the award, if paid by defendant, would be taxable to the partners in a single year.  Because of the progressive nature of both Federal and State income taxation, the partners would suffer a tax penalty on the award compared with the income taxes they would have had to pay had they earned their share of the net income sequentially during the entire period of loss (2011 through 2035).  To neutralize the effect of this adverse tax consequence, a neutralizing payment must be added.

Id.  Shortly after receiving this report, defendant filed a motion for partial summary judgment, contending that plaintiff is not entitled to recover a payment to neutralize the negative consequences of receiving a lump-sum damages award.  The parties have fully briefed defendant's motion, and the court deems oral argument unnecessary.

## II.  DISCUSSION

### A.  Motions for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  R. Ct. Fed. Cl. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine if it "may reasonably be resolved in favor of either party."  Id. at 250.  Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  The parties have not identified any genuine issue of material fact that would preclude the court from ruling on defendant's motion.

### B.  Tax Gross-Up Damages

The gravamen of plaintiff's breach-of-contract claim is that the government's refusal to allow it to prepay the balance of its loan prevented it from obtaining rental income at market rates from the date of the government's refusal through the end of the fifty-year loan repayment period (in other words, from January 27, 2011, through September 4, 2034).  Plaintiff therefore seeks compensation from the government for its lost rental income.  Any lost rental income

recovered by plaintiff in this lawsuit would be paid as a lump sum, and that lump-sum payment would be taxable income for plaintiff.  See 26 U.S.C. § 61(a) (2012) (indicating that "[e]xcept as otherwise provided . . . , gross income means all income from whatever source derived"[2]); Jones v. Corbyn, 186 F.2d 450, 453 (10th Cir. 1950) ("Generally, amounts received as damages in litigation are ordinary income.").  In contrast, had the government allowed plaintiff to prepay the balance of its loan, plaintiff would have received market rate rental income on a periodic basis, and then included that rent as gross income on its income tax returns.  See 26 U.S.C. § 61(a) (defining "gross income" as including rent).  Plaintiff contends that its overall tax liability would be significantly greater with the receipt of a one-time lump-sum damages award compensating for all past and future lost rental income than it would have been with the receipt of periodic rent payments over the course of two decades.[3]  Thus, plaintiff asserts its additional tax burden as a specific element of damages and seeks compensation to neutralize the disparity.

In its motion for partial summary judgment, defendant refers to plaintiff's request for a tax neutralization payment as a tax gross-up claim because plaintiff seeks to "gross up" its damages award to offset its purported increased tax burden.  Defendant contends that under binding precedent from the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), plaintiff is not entitled to a tax gross-up payment.  Plaintiff disagrees, arguing that the Federal Circuit precedent relied upon by defendant does not apply to its request for a tax neutralization payment.  To provide the appropriate context for these arguments, the court prefaces its analysis with a survey of case law pertaining to tax neutralization claims.[4]

## 1. Federal Circuit Case Law

The court first examines the binding precedent of the Federal Circuit.  See Coltec Indus.,

---

[2]  When plaintiff filed this lawsuit, the Internal Revenue Code contained one exception to this rule that pertained to damages received as the result of a lawsuit:  Gross income did not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness[.]"  26 U.S.C. § 104(a)(2).  Congress added another damages-related exception in 2015:  "In the case of any wrongfully incarcerated individual, gross income shall not include any civil damages, restitution, or other monetary award (including compensatory or statutory damages and restitution imposed in a criminal matter) relating to the incarceration of such individual for the covered offense for which such individual was convicted."  26 U.S.C. § 139F(a) (Supp. III 2016).

[3]  Although the court recognizes that the increased tax burden would ultimately be borne by plaintiff's constituent partners, it refers to "plaintiff's" tax burden and tax liability for simplicity.

[4]  The survey includes decisions cited and relied upon by the parties, as well as decisions that the court deems relevant.

Inc. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims."). The Federal Circuit initially addressed tax gross-up claims in Home Savings of America, FSB v. United States, 399 F.3d 1341 (Fed. Cir. 2005). That case arose from the savings and loan crisis of the late 1970s and early 1980s, during which many savings and loan institutions–referred to as thrifts–failed. Id. at 1344-45. The Federal Savings and Loan Insurance Corporation insured the deposits in those thrifts, but did not have sufficient funds to cover all of the losses. Id. at 1345. Thus, the federal government arranged for healthy thrifts to acquire the failing thrifts and assume their liabilities in exchange for "special accounting treatment, according to which they would be permitted to count supervisory goodwill toward meeting their reserve capital requirements." Id. (footnote omitted); see also id. at 1345 n.1 ("Supervisory goodwill is the excess of the purchase price paid for a thrift over the fair value of all identifiable assets acquired."). After the Home Savings of America plaintiffs entered into such an agreement with the federal government and acquired several failing thrifts, Congress enacted the Financial Institution Reform, Recovery, and Enforcement Act of 1989, "which breached various agreements by the government to allow thrifts to count supervisory goodwill." Id. at 1345. Concluding that plaintiffs were entitled to compensation for the government's breach, the Court of Federal Claims awarded damages to the plaintiffs to account for forty years of lost supervisory goodwill, and then grossed up the damages award "to compensate for the taxes that [the plaintiffs] would pay on the award." Id. at 1346.

On appeal, the government argued that grossing up the damages award was improper because (1) the recipient was "unlikely to pay taxes on [the] award given its ability to draw on tax planning resources" and (2) "future tax rates are unknown, so adjusting damages based on projected rates [would be] speculative." Id. at 1355-56. The plaintiffs countered that (1) "[b]ecause the damages must reflect after-tax harm, . . . [the recipient of the damages award] would not be made whole without a tax gross-up" and (2) the "uncertainty over future tax rates [was] minor . . . and . . . that such concerns should not preclude recovery because the burden of imprecision falls on the breaching party, the government." Id. at 1356. Ultimately, the Federal Circuit "adopt[ed] the rule of other courts that a tax gross-up is appropriate when a taxable award compensates a plaintiff for lost monies that would not have been taxable." Id. (citing Oddi v. Ayco Corp., 947 F.2d 257, 267 (7th Cir. 1991); First Nationwide Bank v. United States, 56 Fed. Cl. 438, 449 (2003); LaSalle Talman Bank, F.S.B. v. United States, 45 Fed. Cl. 64, 110 (1999), aff'd in part and vacated in part, 317 F.3d 1363 (Fed. Cir. 2003)). Because it was "not clearly erroneous" for the Court of Federal Claims to find that its damages award constituted compensation for "lost monies that would not have been taxable," the Federal Circuit "affirm[ed] the court's tax gross-up of the award." Id.; accord LaSalle Talman Bank, F.S.B. v. United States, 462 F.3d 1331, 1338 (Fed. Cir. 2006) (affirming the tax gross up of a damages award meant to compensate the plaintiff for the loss of favorable accounting treatment for supervisory goodwill); see also Bank of Am., FSB v. Doumani, 495 F.3d 1366, 1374 (Fed. Cir. 2007) (acknowledging, in another savings and loan case, the propriety of grossing up a damage award to compensate for the loss of nontaxable monies, but affirming the decision of the Court of Federal Claims not to

gross up the damages award in that case due to the record's ambiguity "on the taxability of the recovery" and the fact that the plaintiff's tax rate was "highly variable").

Two years later, in Carabetta Enterprises, Inc. v. United States, 482 F.3d 1360 (Fed. Cir. 2007), the Federal Circuit again examined the tax gross-up issue, but under different factual circumstances. In that case, the plaintiffs owned and managed properties that "provided low-income rental housing under several programs sponsored by" the United States Department of Housing and Urban Development ("HUD"). Id. at 1362. The plaintiffs had acquired the properties using mortgages insured by the federal government pursuant to sections 221(d)(3) and 236 of the National Housing Act, which permitted the prepayment of loan balances after twenty years. Id. However, after the plaintiffs executed their mortgage agreements, Congress enacted ELIHPA and the Low-Income Housing Preservation and Resident Homeownership Act of 1990, Pub. L. No. 101-625, 104 Stat. 4249, preventing the plaintiffs from prepaying the balance of their loans without HUD's prior approval. Carabetta Enters., 482 F.3d at 1363. The statutes did, however, "authorize[] HUD to guarantee private loans on the properties"–referred to as "section 241(f) equity loans"–so long as "the properties would continue to operate as low-income housing and . . . the property owners satisfied certain other requirements." Id. Pursuant to this provision, the plaintiffs executed Repayment Agreements with HUD. Id. But before HUD finished processing the necessary paperwork, Congress enacted the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997, Pub. L. No. 104-204, 110 Stat. 2874 (1996), which "prohibit[ed] HUD from insuring any more section 241(f) equity loans," Carabetta Enters., 482 F.3d at 1363. Instead, HUD was authorized to issue $75 million in interest-free capital loans, to be distributed at HUD's discretion. Id. at 1363-64. Because HUD chose to distribute the $75 million in such a way that the plaintiffs did not receive all of the funds to which they were entitled under the Repayment Agreements, the plaintiffs brought suit for breach of contract. Id. at 1364. The Court of Federal Claims found that the government breached the Repayment Agreements and awarded damages. Id. However, in calculating damages, the court denied the plaintiffs' request for "a 'tax gross-up' on the proceeds of the capital loans that should have been issued[.]" Id.

On appeal, "[t]he parties agree[d] that the capital loans [the plaintiffs] would have received absent the breach would have been tax-free, but that the damages award [they would] receive is taxable." Id. at 1366-67. The plaintiffs therefore argued that given "the differing tax treatment accorded to funds that would have been obtained through actual performance and to the funds that [would] be obtained pursuant to a damages award," they were "entitled to an increase in the amount of the award to offset the taxes [they would] be required to pay." Id. at 1367. The Federal Circuit rejected the plaintiffs' argument, explaining:

> While it is true that a "tax gross-up" is appropriate when a taxable award compensates a plaintiff for lost monies that would not have been taxable, that is not the case here because [the plaintiffs are] not being compensated for the loss of untaxable funds. The measure of [the plaintiffs'] expectation damages is the amount [they] would have gained from receiving the capital loans. Because [the

plaintiffs] would have had to repay the loans, the only benefit [the plaintiffs] would have realized from each loan was the investment income earned on the principal minus any interest [they] would have been required to pay over the life of the loan. HUD's capital loans were interest-free, meaning that [the plaintiffs'] benefit would be measured by the total amount of the loan's investment income.

> . . . . Because the capital loans would have been provided on an interest-free basis, the amount [the plaintiffs] would have received under the contract[s] is the same as the amount [they] would have had to repay. Accordingly, the only difference between the two amounts is the adjustment to present value. Since the adjustment to present value is a way of accounting for the estimated value of interest over time, [the plaintiffs'] damages model simply takes into account the amount of interest, in today's dollars, that would accumulate over the life of the loan. That is another way of describing investment income. Because . . . investment income from tax-free money is taxable, [the plaintiffs'] lost income would have been taxable and thus [the plaintiffs are] not entitled to a tax gross-up.

Id. (citation omitted).

## 2. Case Law From Outside of the Federal Circuit

The United States Courts of Appeals in other circuits have also addressed tax gross-up claims. The decisions of these courts, while "accorded great weight," are not binding on the Federal Circuit, Admiral Fin. Corp. v. United States, 378 F.3d 1336, 1340 (Fed. Cir. 2004), or on the Court of Federal Claims, Bankers Tr. N.Y. Corp. v. United States, 225 F.3d 1368, 1371 (Fed. Cir. 2000). Several of these decisions touch upon the issue raised by plaintiff in this case and are worthy of note and discussion.

### a. Decisions in Tort Cases

First, some federal appellate courts have held that a tax gross-up payment is appropriate in personal injury and wrongful death cases when damages are meant to compensate for lost future earnings, which are typically calculated on an after-tax basis; in such cases, the lack of a tax gross-up payment would result in the plaintiffs paying taxes twice, once because income taxes were subtracted from the lost future earnings and again when they received income from investing their damages award. See, e.g., Sosa v. M/V Lago Izabal, 736 F.2d 1028, 1034 (5th Cir. 1984) ("[O]ne appropriate method of taking [a wage earner's income tax] into account is by increasing the lump sum damage award by the amount of income tax that would have to be paid on the earnings of the award."); DeLucca v. United States, 670 F.2d 843, 843-44 (9th Cir. 1982) (affirming the district court's award of compensation for "income taxes on the investment earnings of the lump sum award").

**b.  Decisions in Employment Discrimination Cases**

In addition, several federal appellate courts have addressed, in employment discrimination cases, whether a tax gross up of a lump-sum back pay award is appropriate when the plaintiffs' overall tax liability increased as a result of the award.  The decisions of these courts reveal a split among the circuits.  Three courts–the United States Court of Appeals for the Third Circuit ("Third Circuit"), the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"), and the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit")–have concluded that a tax gross-up payment was appropriate in these circumstances.  See EEOC v. N. Star Hosp., Inc., 777 F.3d 898, 904 (7th Cir. 2015) ("Upon [the employee's] receipt of . . . back pay, taxable as wages in the year received, [the employee] will be bumped into a higher tax bracket.  The resulting tax increase, which would not have occurred had he received the pay on a regular, scheduled basis, will then decrease the sum total he should have received had he not been unlawfully terminated . . . .  Put simply, without the tax-component award, he will not be made whole, a result that offends [the] remedial scheme [of Title VII of the Civil Rights Act of 1964 ("Title VII")].  . . .  [T]he district court did not abuse its wide discretion in granting this . . . equitable remedy." (citation omitted)); Eshelman v. Agere Sys., Inc., 554 F.3d 426, 440-43 (3d Cir. 2009) (holding, in light of the "'make whole' remedial purpose" of antidiscrimination statutes such as the Americans With Disabilities Act, that granting the plaintiff "an additional monetary award to offset the negative tax consequences of the back pay award . . . was warranted because the taxes [the plaintiff] would have to pay on the lump sum award of back pay would be higher than what she would have paid had she received this pay in the normal course of employment (i.e., in the absence of discrimination)"); Sears v. Atchison, Topeka & Santa Fe Ry., 749 F.2d 1451, 1456 (10th Cir. 1984) ("[T]he district court did not abuse its discretion when it included a tax component in the back pay award to compensate class members for their additional tax liability as a result of receiving over seventeen years of back pay in one lump sum.  . . .  [T]he trial court has wide discretion in fashioning remedies to make victims of discrimination whole.  A tax component may not be appropriate in a typical Title VII case.  But this case presents special circumstances in view of the protracted nature of the litigation.  The court-ordered back pay awards will likely place the living members of the class in the highest income tax bracket on much of the back pay they now receive." (citations omitted)).

In contrast, two courts–the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") and the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit")–have rejected tax gross-up payments in these circumstances, providing distinct rationales for their conclusions.  The court first examines the D.C. Circuit's rationale.  The D.C. Circuit initially confronted the issue in Dashnaw v. Peña, a case involving a violation of the Age Discrimination in Employment Act by the Federal Maritime Administration, a division of the United States Department of Transportation.  12 F.3d 1112, 1113-14 (D.C. Cir. 1994).  On appeal, the plaintiff argued "that the District Court should have granted him additional compensation to help cover the higher taxes he [would] have to pay because he will receive his backpay in a lump sum rather than as salary paid out over a period of years."  Id. at 1116.  The D.C. Circuit noted that "the general rule that victims of discrimination should be made whole

-8-

does not support 'gross-ups' of backpay to cover tax liability," and held that "[g]iven the complete lack of support in existing case law for tax gross-ups,"[5] it would not "extend the law in this case." Id.  The D.C. Circuit reaffirmed this holding in Fogg v. Gonzales, a case involving a violation of Title VII by the United States Marshals Service, a division of the United States Department of Justice.  492 F.3d 447, 449, 455-56 (D.C. Cir. 2007).  In that case, the district court increased the amount of damages it awarded to plaintiff for back pay "to offset the adverse tax consequences of a lump sum award . . . ." Id. at 449.  The government challenged the tax gross-up payment on appeal as contrary to the holding in Dashnaw.  Id. at 455.  In response, the plaintiff attempted to distinguish Dashnaw based on the relative sizes of the back pay awards and the relative delays in obtaining the awards.  Id. at 455-56.  The D.C. Circuit rejected the plaintiff's argument, noting that the holding in Dashnaw was based on the absence of any case law supporting tax gross-up payments, and "not upon the lack of delay or the size of the award in that particular case."  Id. at 456.  It therefore "reverse[d] the judgment of the district court insofar as it increased [the plaintiff's] back pay award to account for his higher tax liability."  Id.

By comparison, the Eighth Circuit, in rejecting a tax gross-up claim in a discrimination suit brought against the Social Security Administration, did so on a more specific basis–that the Rehabilitation Act of 1973 did not waive the government's sovereign immunity so as to permit a tax gross-up claim.[6]  Arneson v. Callahan, 128 F.3d 1243, 1244-45, 1247 (8th Cir. 1997).  In Arneson, the district court awarded the plaintiff "additional monies to compensate [him] for the adverse tax consequences from receiving back pay in two payments . . . ." Id. at 1247.  The federal government challenged the award on appeal, arguing that (1) such an award was not available under the statute (which incorporated Title VII's remedies) and (2) if such an award were available, Congress had not waived sovereign immunity for such an award.  Id.  The Eighth Circuit agreed with the latter argument, holding:

> We do not believe that Congress has authorized the tax enhancement remedy against the federal government.  Nowhere within the statutory framework of the Rehabilitation Act or Title VII[] has Congress expressly waived sovereign immunity from tax enhancement damages.  The mere fact that Congress intended

---

[5] The D.C. Circuit neglected to address the Sears decision, which did allow a tax gross-up payment in an employment discrimination suit and was issued by the Tenth Circuit nine years earlier.

[6] Notably, the Eighth Circuit has also upheld a district court's refusal to gross up a lump-sum payment of pension benefits in a Title VII case brought against a private employer because the plaintiff "failed to present evidence of the enhancement's amount or a convenient way for the court to calculate the amount at the time the court announced its judgment."  Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101, 3 F.3d 281, 287 (8th Cir. 1993).

that discrimination victims receive a full measure of back pay does not amount to an unequivocal and express waiver of sovereign immunity.

Id. It therefore reversed the district court's award. Id.

### c. Decisions in Breach-of-Contract Cases

Finally, several federal appellate courts have considered the propriety of increasing damages awards to offset additional income tax liability in breach-of-contract cases. For example, in Paris v. Remington Rand, Inc., a case before the United States Court of Appeals for the Second Circuit ("Second Circuit"), private parties executed a contract pursuant to which the defendant agreed to pay royalties to the plaintiff for his invention–a mechanism used in tabulating machines. 101 F.2d 64, 65 (2d Cir. 1939). Five years later, the defendant began using a new model of tabulating machine and ceased paying royalties to the plaintiff. Id. The plaintiff brought suit, alleging that the new model incorporated his invention and that, as a result, he remained entitled to royalties. Id. The district court agreed, and awarded royalties to the plaintiff. Id. at 67-68. It also awarded to the plaintiff "an amount of damages for additional income tax" that the plaintiff would be required to pay as a result of receiving the royalties in a lump sum rather than over the course of several years. Id. at 68. On appeal, the Second Circuit rejected this "tax differential" award, explaining:

> To calculate such an item of damages permits of wide speculation. If such damages are awarded, the amount of tax differential will depend on the method by which [the plaintiff] has kept his books–cash or accrual basis. Damages would vary in each instance. Another consideration would be the taxpayer's financial position and other earnings of the year which would enter into the calculations so that it would be highly speculative to find the amount of the damages due to [the defendant's] breach of contract. Such variation of tax is not a consequential damage flowing from the breach of contract.

Id.

The Seventh Circuit has also considered the propriety of tax gross-up claims in breach-of-contract cases on at least two occasions. In Oddi, the plaintiff sought advice from a financial planner hired by his employer regarding how he should invest the funds in his employer's profit-sharing plan upon his retirement. 947 F.2d at 259-60. The plaintiff was advised that he could either take a lump-sum distribution of the funds (which would result in taxable income) or roll over the funds to an individual retirement account (which would result in the deferral of income taxes until the funds were withdrawn). Id. Because the financial planner advised that a lump-sum distribution was financially advantageous, the plaintiff chose that option. Id. at 260. However, the plaintiff subsequently discovered that the financial planner's calculations were flawed, and that it would have been more advantageous–by $2 million–to roll over the funds to an individual retirement account. Id. He therefore "filed suit in both contract and tort for the

difference between the projected return on his deferred-income investment and the same under the lump-sum plan." Id. at 261. The district court awarded the plaintiff "$483,088 as the present value of damages sustained plus income tax on the award." Id. On appeal, the defendant contended that it was legal error for the district court to gross up the damages award. Id. at 267. In response, the Seventh Circuit observed:

> Generally courts do not increase damages to compensate for expected tax liability on the damage award.[7] When damages place a plaintiff in the position he would have occupied had the defendant's obligation been fulfilled, the amount recovered would (but for the breach) have been income, and thus taxable. Since the plaintiff would have paid taxes even absent the breach, he should not be compensated for the taxes he will have to pay on the damage award he receives as a result of the breach.

Id. (footnote added) (citation omitted). The general rule notwithstanding, the Seventh Circuit stated that a tax gross-up payment may be appropriate in certain circumstances, remarking that "[c]ourts have adopted a pragmatic approach to the question of accounting for income taxes on damage awards," id. (citing Sosa, 736 F.2d at 1033-34; DeLucca, 670 F.2d at 845), and that "the case before [it] call[ed] for a practical approach," id. It explained:

> Although occurring in a contract setting, defendant's error did not deprive plaintiff of taxable income. The entire purpose of comparing the deferred-income plan and the lump-sum plan was to predict which one would produce the greatest after-tax fund of capital for [the plaintiff's] estate. Therefore, damages in the case were computed as if taxes had already been paid on either basis–this being the appropriate way to compare the differential between the two plans. [The plaintiff] will now incur a new tax on the damages awarded to reflect the differential, one never required had he followed the deferred-income plan from the beginning. This new tax is solely the result of [the defendant's] mistake, and the [defendant] must therefore compensate him for the taxes thus imposed.

Id.

The Seventh Circuit acknowledged its holding in Oddi several years later in Medcom Holding Co. v. Baxter Travenol Labs., Inc., 106 F.3d 1388, 1404 (7th Cir. 1997). In that case, the defendant breached a stock purchase agreement by failing to transfer certain stock to the plaintiff. Id. at 1403. The district court granted specific performance and directed the transfer of the stock. Id. It then awarded equitable compensation to the plaintiff to account for the tax benefits that the defendant received from improperly possessing the stock. Id. On appeal, the plaintiff argued that the district court erred in not grossing up the equitable compensation to

---

[7] The Seventh Circuit did not provide a citation for this proposition.

account for the income taxes it would incur upon receiving the compensation. <u>Id.</u> at 1404. The Seventh Circuit disagreed:

> We give great deference to the district court in exercising its equitable discretion. The district court concluded that compensating for tax effects was inappropriate and speculative. In <u>Oddi</u>, we noted that the party seeking an increase in an award to reflect tax effects bears the "burden of presenting evidence that shows that he will be liable for the prescribed amount of taxes." [947 F.2d] at 268. We cannot say that the district court abused its discretion in refusing to increase the damage award to reflect potential tax effects.

<u>Id.</u>; <u>see also</u> <u>Medcom Holding Co. v. Baxter Travenol Labs., Inc.</u>, No. 87 C 9853, 1995 WL 609125, at *5 (N.D. Ill. Oct. 13, 1995) (containing the district court's rationale for rejecting the plaintiff's tax gross-up claim: "[The plaintiff's reasoning] requires the court to speculate as to post-judgment tax consequences of an award. It is generally inappropriate to consider hypothetical post-judgment tax consequences when formulating awards. [The plaintiff] has failed to provide any precedent to the contrary."), <u>aff'd</u>, 106 F.3d at 1388.

Finally, the Tenth Circuit has also addressed the propriety of a tax gross-up claim in a breach-of-contract case. In <u>O'Toole v. Northrop Grumman Corp.</u>, the defendant breached its agreement to reimburse the plaintiff's relocation expenses. 499 F.3d 1218, 1220 (10th Cir. 2007). The district court awarded consequential damages, but denied the plaintiff's request for a tax gross-up payment. <u>Id.</u> at 1220-21, 1226. Plaintiff appealed the latter ruling, arguing that under New York law, he was entitled to "be put back in the same economic position as he would have been in if [the defendant] had not breached the contract." <u>Id.</u> at 1226; <u>see also id.</u> at 1227 (reflecting that the defendant's policy "provide[d] for gross-up on consequential damages in that it was . . . policy to make relocations financially neutral to employees"). The defendant responded "that courts generally do not increase damage awards to offset the effect of taxes," <u>id.</u> at 1227 (citing <u>Medcom Holding</u>, 106 F.3d at 1404), but acknowledged "that courts do gross-up damage awards 'when a taxable award compensates a plaintiff for lost monies that would not have been taxable,'" <u>id.</u> (quoting <u>Home Sav. of Am.</u>, 399 F.3d at 1356). However, the defendant did not "go through the district court's damage awards to show how these principles appl[ied] to the facts of this case," and there was no basis for the Tenth Circuit to make the determination itself. <u>Id.</u> Therefore, the Tenth Circuit remanded the issue to the district court with the following guidance:

> [T]he parties [are to] explain to the district court whether [the plaintiff's] damage awards are taxable and whether they replace monies that would not have been taxable. Given that [the plaintiff] was awarded both earnings and earnings on earnings, as well as reimbursement for funds withdrawn from his retirement account to pay taxes and penalties on funds withdrawn to pay undisputed relocation costs, there may well be some significant parsing out regarding what

should and should not be grossed up.  The principles set forth in <u>Medcom</u>
[<u>Holding</u>] and <u>Home Savings of America</u> should guide the district court's
determinations regarding same.

<u>Id.</u>

### C.  Plaintiff's Claim for a Tax Neutralization Payment Is Permissible

As noted above, defendant argues that the binding precedent of the Federal Circuit is
controlling in this case.  In particular, it argues that the Federal Circuit

has drawn a bright line for the recovery of a tax gross-up.  A tax gross-up is
appropriate when a taxable award compensates a plaintiff for lost monies that
would not have been taxable.  [<u>Home Sav. of Am.</u>, 399 F.3d at 1356].  However,
in the case . . . where the taxable award compensates for taxable losses, a tax
gross-up is not a recoverable element of damages.  [<u>Carabetta Enters.</u>, 482 F.3d at
1367].

Mot. 8.  Defendant asserts that because the increased income that plaintiff would have received
absent the government's breach of contract was taxable, any damages award that compensates
plaintiff for its lost income is also taxable.  Therefore, defendant contends, plaintiff's tax gross-
up claim should be dismissed as a matter of law.

Plaintiff disputes defendant's characterization of its claim.  It asserts that it is not seeking
to avoid paying income tax on the market rate rental income it would have received in the
absence of the government's breach of contract.  Rather, plaintiff states that it is merely
requesting that it not be required to pay any income tax beyond what it would have paid had it
received market rate rental income from the date that it sought to prepay the balance of its loan.
Plaintiff argues that the Federal Circuit has not considered such a request, and that this court
should look to other case law for guidance.

The court agrees with plaintiff that the Federal Circuit's decision in <u>Carabetta Enterprises</u>,
upon which defendant relies, does not specifically address the type of claim that plaintiff asserts
in this case.  In <u>Carabetta Enterprises</u>, the plaintiffs were deprived of interest-free loans as a
result of the government's breach of contract.  482 F.3d at 1367.  The measure of the plaintiffs'
damages was the present value of the interest that they would have earned from investing the
proceeds of those loans.  <u>Id.</u>  The interest income and the damages awards were both taxable
amounts.  <u>Id.</u>  The Federal Circuit therefore rejected the plaintiffs' assertion that the funds they
would have obtained "through actual performance" and the funds they would obtain "pursuant to
the damages award" were subject to a "differing tax treatment," and accordingly affirmed the
denial of their tax gross-up claim.  <u>Id.</u>  In other words, the Federal Circuit concluded that if a
plaintiff's lost income is taxable, then damages based on that lost income are also taxable.

-13-

The plaintiffs in <u>Carabetta Enterprises</u> did not argue, as plaintiff does here, that the income tax they would owe on their damages awards was greater than the income tax that they would have owed on their interest income.  Consequently, the Federal Circuit did not have the occasion to address whether a tax gross-up payment could be used to offset an increase in the tax burden a plaintiff might face as a result of receiving a lump-sum damages award instead of a stream of income spread over the course of many years.  Thus, its ruling in <u>Carabetta Enterprises</u> does not bind this court on the issue presented by plaintiff.  <u>See</u> <u>Webster v. Fall</u>, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); <u>JVC Co. of Am., Div. of US JVC Corp. v. United States</u>, 234 F.3d 1348, 1353 (Fed. Cir. 2000) ("Because neither of these cases cited by [the plaintiff] explicitly addressed the question . . . , they are not precedent concerning that issue."); <u>Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.</u>, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises.").

Because the Federal Circuit has not addressed the propriety of the type of tax neutralization payment claimed by plaintiff, the court examines the case law from other circuits. The most relevant decisions are those issued in breach-of-contract cases by the Second, Seventh, and Tenth Circuits.  As noted above, the Second Circuit concluded that the tax neutralization payment sought by the plaintiff was too speculative to warrant recovery.  <u>Paris</u>, 101 F.2d at 68. Similarly, the Seventh Circuit affirmed the ruling of the district court, under an abuse-of-discretion standard, that the tax neutralization claim was too speculative.[8]  <u>Medcom Holding</u>, 106 F.3d at 1404.  And, the Tenth Circuit directed the district court to consider the plaintiff's tax gross-up claim in light of the principles set forth in <u>Medcom Holding</u> (which restated the principles set forth in <u>Oddi</u>) and <u>Home Savings of America</u>–in other words, that courts generally do not increase a damages award to compensate for the expected increase in tax liability resulting from the award unless the award was meant to compensate for tax-free income.  <u>O'Toole</u>, 499 F.3d at 1227.  In short, in the Second and Seventh Circuits, tax neutralization claims are not foreclosed in breach-of-contract cases, but plaintiffs must establish that their claims are more than speculative to prevail.  In contrast, in the Tenth Circuit, the type of tax neutralization payment that plaintiff seeks here appears to be prohibited in breach-of-contract cases.

Although the Second and Seventh Circuits do not provide a definitive standard for assessing tax neutralization claims, they appear to allow for the award of a tax neutralization payment if a plaintiff presents preponderant evidence of the amount of the payment to which it is entitled.  This court agrees with such an approach.  Plaintiffs in this court should be allowed to present evidence regarding the amount that their overall tax burden would be increased by a damages award that compensates them for their lost income, and if that evidence reflects that the tax differential can be ascertained with reasonable certainty, then the court should consider

---

[8]  The other Seventh Circuit decision, <u>Oddi</u>, does not address the type of tax neutralization claim asserted by plaintiff.

allowing recovery of a tax neutralization payment.[9]  See Medcom Holding, 106 F.3d at 1404; Paris, 101 F.2d at 68; see also Bank of Am., 495 F.3d at 1374 (affirming the decision of the Court of Federal Claims not to gross up the damages award due, in part, to the fact that the plaintiff's tax rate was "highly variable"); Anchor Sav. Bank, FSB v. United States, 123 Fed. Cl. 180, 185 (2015) (rejecting the suggestion that a tax gross-up payment was improper due to the "numerous variables and ambiguities inherent in assessing [the plaintiff's] future tax liability" because such payments are "based on a projection of plaintiff's tax liability, which inevitably entails a certain degree of uncertainty" and "[t]he Federal Circuit does not require 'absolute exactness or mathematical precision.'" (quoting Bluebonnet Sav. Bank, F.S.B. v. United States, 266 F.3d 1348, 1355 (Fed. Cir. 2001))).  The purpose of a tax gross-up payment in a breach-of-contract suit is to "ensure that damages awarded effectively compensate plaintiffs for the harm caused by defendant's action."  Anchor Sav. Bank, 123 Fed. Cl. at 183.  In short, damages should make the nonbreaching party whole.  Id.; Anchor Sav. Bank, FSB v. United States, 597 F.3d 1356, 1361 (Fed. Cir. 2010) ("Damages for breach of contract are designed to make the non-breaching party whole."); Ind. Mich. Power, 422 F.3d at 1373 ("The remedy for breach of contract is damages sufficient to place the injured party in as good a position as it would have been had the breaching party fully performed.").  If plaintiff here can prove, by a preponderance of evidence, that a lump-sum damages award would result in it paying more taxes than it would have paid in the absence of the breach of contract, then it is made whole only if it receives a payment to offset its increased tax burden.  Indeed, if plaintiff can make the requisite showing, a tax neutralization payment is particularly appropriate because the breaching party is the federal government.  Without the award of a tax gross-up payment, the government would benefit twice from its breach:  first–in its proprietary capacity as a contracting party–by requiring plaintiff to continue to provide low- and moderate-income housing when plaintiff was not contractually required to do so, and then–in its role as a tax collector–from collecting more tax payments than it would have collected absent its breach.  The government should not be enriched from breaching its contracts.  Accord AmBase Corp. v. United States, 100 Fed. Cl. 548, 578 (2011) ("[T]he Government as breaching party should not benefit from its breach."); see also Citizens Fin. Servs., FSB v. United States, 64 Fed. Cl. 498, 502 (2005) ("When the government breaches a contract, the law requires the government, like any private party, to compensate an injured party for any harm that it has caused."), aff'd, 170 F. App'x 129 (Fed. Cir. 2006) (mem.).

Defendant's objections to permitting the type of tax neutralization payment requested by plaintiff are not persuasive.  Defendant first contends that allowing for such a payment would "swallow the rule" articulated in Carabetta Enterprises "that a tax gross-up is not available on damages compensating for taxable losses," Reply 5, because "[i]n any case–except the extremely

---

[9]  Plaintiffs must also establish, as with any other damages claim, that the increased tax burden was "reasonably foreseeable by the breaching party at the time of contracting" and that "the breach [was] a substantial causal factor in the" the increased tax burden.  Ind. Mich. Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005).  Such a showing must be made by a preponderance of evidence.  SUFI Network Servs., Inc. v. United States, 755 F.3d 1305, 1312 (Fed. Cir. 2014).

rare instance where judgment is entered in the same tax year as the loss–the tax rate in the year of the judgment will inevitably be different from the tax rate in the year of the loss," id. at 6. As a result, defendant asserts, a court would be required to determine and account for "the marginal tax differences" in every case where a plaintiff seeks damages based on taxable income. Id. However, the fact that, in most cases, "the tax rate in the year of the judgment will inevitably be different from the tax rate in the year of the loss," id., does not mean that plaintiffs will always seek a tax gross-up payment to account for the tax consequences of a damages award. A plaintiff might determine, based on its individual circumstances, that the receipt of a lump-sum damages award would decrease, rather than increase, its overall tax burden. Or, a plaintiff might conclude that the tax consequences of a lump-sum damages award would be negligible. If a plaintiff does not assert a tax gross-up claim, then the court would have no occasion to consider the tax consequences of a damages award. It also bears emphasizing that the award of a tax gross-up payment is not automatic even if requested because a plaintiff must prove all elements of its damages claim by a preponderance of the evidence.

Defendant next contends that disallowing plaintiff's claim for a tax neutralization payment is consistent with the decision of the United States Supreme Court ("Supreme Court") in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481 (1968). In Hanover Shoe, the defendant, a manufacturer and distributor of shoe machinery, was found to be engaged in the monopolistic "practice of leasing and refusing to sell its more complicated and important shoe machinery . . . ." Id. at 483. The plaintiff, a shoe manufacturer, established that it "would have bought rather than leased" shoe machinery from the defendant "had it been given the opportunity to do so," and that the cost of purchasing the shoe machinery would have been less than the cost of renting it. Id. at 487. The district court awarded the plaintiff damages to compensate for the cost difference. Id. On appeal, the Third Circuit concluded "that since only after-tax profits can be reinvested or distributed to shareholders, [the plaintiff] was damaged only to the extent of the after-tax profits that it failed to receive." Id. at 503. It therefore remanded the damages award to the district court "to take account of the additional taxes [the plaintiff] would have paid[] had it purchased machines instead of renting them during the years in question." Id. at 502.

The Supreme Court disagreed with the Third Circuit's conclusion. Id. at 503. It explained that the plaintiff's damages award was taxable income, and that reducing the award "by the amount of the taxes that [the plaintiff] would have paid had it received greater profits in the years it was damaged would be to apply a double deduction for taxation, leaving [the plaintiff] with less income than it would have had" absent its injury. Id. The Supreme Court then acknowledged "that accounting for taxes in the year when damages are received rather than the year when profits were lost can change the amount of taxes" collected by the Internal Revenue Service. Id. It noted, however, that

> because the statute of limitations frequently will bar the [Internal Revenue Service] from recomputing for earlier years, and because of the policy underlying the statute of limitations–the fact that such recomputations are immensely difficult or impossible when a long period has intervened–the rough result of not taking

account of taxes for the year of injury but then taxing recovery when received seems the most satisfactory outcome.

Id.

According to defendant, Hanover Shoe counsels against accounting "for the difference in the tax rates between the years when the losses occurred and the years when damages [are] paid." Reply 7.  Defendant reads Hanover Shoe too broadly.  The Supreme Court's primary concern in Hanover Shoe was ensuring that the plaintiff was not subjected to double taxation by having income taxes subtracted from the lost profits that constituted its damages and then being required to pay taxes on the damages award.  Cf. Kalman v. Berlyn Corp., 914 F.2d 1473, 1483 (Fed. Cir. 1990) (noting that the "Hanover Shoe rule"–that taxes should not be deducted from lost profit damages–"has been followed in patent infringement cases").  Its comments regarding the tax rate differential were relevant only to its discussion concerning when the plaintiff's lost income should be subject to taxation (time of injury versus time of damages award).  In this case, there is no dispute that plaintiff would be taxed on its lost income when it receives a damages award.  Rather, plaintiff is challenging the amount of taxes that it should be required to pay on any such lost income.  Hanover Shoe does not preclude the court from addressing that challenge.

Finally, defendant contends that if the court allows the type of tax gross-up claim asserted by plaintiff, it would make a plaintiff's income tax returns relevant, and therefore discoverable, "in nearly every case."  Reply 8.  As the court noted above, however, not every plaintiff will want, or need, to assert a tax gross-up claim.  Thus, it is mere speculation to contend that income tax returns would be relevant in every case.  Moreover, the fact that allowing a new claim might result in additional discovery is no reason to preclude a plaintiff from bringing that claim in the first instance.

In sum, the court declines to apply the holding in Carabetta Enterprises in this case because the facts of the two cases are distinguishable.  Any damages award should make plaintiff whole and plaintiff cannot be made whole if it is denied the opportunity to present evidence that the government's breach of contract will cause it to sustain an increased tax burden.  Indeed, if plaintiff was denied the opportunity to present such evidence, the government might end up benefitting twice from its breach–first by retaining low- and moderate-income housing, and then by collecting a greater amount of income tax.  The court will not condone additional harm to plaintiff, so long as plaintiff can prove the amount of the tax neutralization payment to which it is entitled by a preponderance of the evidence.  Ultimately, plaintiff should receive an amount of damages that puts it in the same economic position it would have been in had the government not breached the contract.

## III.  CONCLUSION

As set forth above, the court concludes that plaintiff is entitled to attempt to prove, at trial, that a lump-sum damages award would increase its overall tax liability beyond what it

would have been had it received market rate rental income from the date that it sought to prepay the balance of its loan.  Accordingly, the court **DENIES** defendant's motion for partial summary judgment as to the propriety of plaintiff's claim for a tax neutralization payment.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge